UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

JASON MCGAREY,

             Plaintiff

v.

YORK COUNTY, *et al*.,

             Defendants

Civil No. 05-134-P-C

Gene Carter, Senior District Judge

### ORDER GRANTING DEFENDANT LANOIE'S
### MOTION TO SET ASIDE DEFAULT

Now before the Court is Defendant Roger Lanoie's motion seeking that the Court set aside the default entered against him on November 1, 2005, pursuant to Federal Rule of Civil Procedure 55(c). For the reasons stated below the Court will grant that Motion.

### Facts

The Complaint alleges that Plaintiff suffered a broken jaw resulting from an inmate-on-inmate assault at the York County Jail. Complaint ¶ 26 (Docket Item No. 1). Defendant Lanoie is alleged to have been a Corrections Officer at the jail at the time of this incident. *Id*. ¶ 18. Plaintiff claims that Defendant Lanoie is liable for these damages because his failure to protect him from the assailant constitutes a violation of his civil rights, 42 U.S.C. § 1983, and negligence. *Id*. ¶¶ 41-47. The Complaint also makes claims against York County, the Sheriff of York County, and various unnamed medical,

nursing, and cafeteria personnel.

Prior to filing the Complaint, Plaintiff's counsel had numerous discussions with Malcolm Ulmer, claim manager for York County's risk pool, regarding the possibility of settling the claims prior to filing of the suit. As early as October 2004, Mr. Ulmer was provided a draft of the complaint that was ultimately filed in this case. The risk pool notified Plaintiff in July 2005, that it would not be making a settlement offer. On July 7, 2005, Plaintiff's counsel informed Mr. Ulmer that he planned to file the suit soon. Plaintiff filed the Complaint on July 14, 2005. Plaintiff did not notify either Mr. Ulmer or the Risk Pool that the Complaint had, in fact, been filed. Affidavit of Malcolm Ulmer ¶ 6, attached to Defendant Lanoie's Motion to Set Aside Default (Docket Item No. 14).

Defendant Lanoie was served with the Summons and Complaint on September 24, 2005. His affidavit states that the next day he reported service of the Summons and Complaint to his shift supervisor, who referred him to Captain John Angis. Affidavit of Roger Lanoie ¶ 4, attached to Defendant Lanoie's Motion to Set Aside Default. The affidavit further states that Defendant Lanoie informed Captain Angis that he had been served and that Captain Angis responded by stating that the jail was aware of the suit and that Defendant Lanoie would be contacted if "they" needed anything further from him. *Id.* ¶ 5. Defendant Lanoie asserts that he interpreted Captain Angis' remarks to mean that attorneys for the County would be responding to the Complaint on his behalf. *Id.* ¶ 6. Defendant Lanoie claims that to his knowledge, he followed the standard practice within the jail in terms of notifying superiors as to service of summons and complaint and that such complaints are referred to attorneys for the County to be answered. *Id.* ¶ 7. Defendant Lanoie took no further steps in order to either respond to the Complaint or to

2

ensure that it was being answered by someone on his behalf.

Neither Defendant Lanoie, nor anyone acting on his behalf, responded to the Complaint by the date required—October 14, 2005. Two weeks later, on October 31, 2005, Plaintiff filed for an entry of default, which was entered the following day. Plaintiff did not contact Mr. Ulmer to inform him that the Complaint had in fact been filed, or to alert him that Lanoie had failed to respond to the Complaint. *See* Affidavit of Malcolm Ulmer ¶¶ 8-9.

On November 2, 2005, York County was served with the Complaint. York County informed Mr. Ulmer of the service that same day. *Id.* ¶ 6. This was the first time that Mr. Ulmer learned that the Complaint had been filed. *Id.* On November 4, 2005, Mr. Ulmer retained Attorney Michael Schmidt to represent all named Defendants. Affidavit of Michael Schmidt ¶ 3, attached to Defendant Lanoie's Motion to Set Aside Default. That same day Attorney Schmidt reviewed the court docket, discovered that Defendant Lanoie had defaulted, and informed Mr. Ulmer of this fact. *Id.* ¶ 4.

Before moving to lift the default Attorney Schmidt attempted to extract an agreement from Plaintiff's counsel to set aside the default. *Id.* ¶¶ 5-6. Plaintiff's counsel indicated that he may be willing to do so. *Id.* ¶ 7. After further consideration and consultation with his client, however, Plaintiff's attorney, on November 23, 2005, informed Mr. Schmidt that he felt it was not in his client's best interest to agree to the removal of the default, and, consequently, that he would not do so. *Id.* ¶ 11.

On the same day that Plaintiff's counsel indicated that he would not agree to the removal of the default, Mr. Ulmer retained Attorney John Wall for the purpose of having the default removed. Affidavit of John J. Wall ¶ 2, attached to Defendant Lanoie's

Motion to Set Aside Default. Attorney Wall was absent from his office from November 24, 2005, until November 30, 2005. *Id*. ¶¶ 4-5. On December 6, 2005, Attorney Wall filed the instant motion, along with affidavits and a memorandum of law.

### Discussion

Federal Rule of Civil Procedure 55(c) permits this Court to set aside an entry of default "[f]or good cause shown." The Rule is an "express[ion of] the traditional inherent equity power of the federal courts," and reflects the "competing policies and values that underlie the concept of default." *KPS & Associates, Inc., v. Designs By FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003) (*initially quoting from* 10A Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 3d § 2692 (1998)). Thus, while the rule "furnishes an invaluable incentive for parties to comply with court orders and rules of procedure", *id*. at 13, it is tempered by "the philosophy that actions should ordinarily be resolved on their merits," *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989). Although the burden to demonstrate good cause rests upon the party seeking relief from an entry of default, "a district court should resolve doubts in [that party's] favor." *Id*. To guide the Court's exercise of discretion, the United States Court of Appeals for the First Circuit has identified seven factors that a District Court may consider in order to determine if good cause exists: "(1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; [and] (7) the timing of the motion [to set aside entry of default]." *Designs By FMC, Inc.*, 318 F.3d at 12 (*citing McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 503 (1st Cir. 1996)).

The relevance of several of these factors appears beyond dispute. Although Plaintiff opposes setting aside the default, he makes no claim that any prejudice has resulted from the delay, nor does there appear to be any prejudice. He does not dispute that Defendant Lanoie has presented a meritorious defense. While the precise amount in controversy is not apparent, Plaintiff does allege that he suffered a broken jaw from the attack, and, thus, a substantial sum of money is involved. Finally, the record makes clear that once it was discovered that Lanoie had defaulted, action was taken with reasonable promptness to have the default set aside. All of these factors weigh in favor of granting Defendant's Motion.

There appears to be some dispute as to whether the default was willful. A default may be willful "where it shows contempt for the court's procedures or an effort to evade the court's authority." *Lucerne Farms v. Baling Technologies Inc.*, 208 F.R.D. 463, 466 (D. Me. 2002). Plaintiff asserts that Lanoie's claim, that he informed Captain Angis of the action, is a fabrication, and that his failure to respond was motivated by animus against his employer. As proof, Plaintiff has submitted an affidavit by his attorney recounting a conversation in which Attorney Schmidt "indicated that the [r]isk [p]ool believed that Officer Lanoie may have neglected to provide notice of the lawsuit to the [r]isk [p]ool intentionally, as retribution for a dispute Officer Lanoie had with his employer." Affidavit of Benjamin R. Gideon ¶ 7 (Docket Item No. 16). This assertion, however, is of poor evidentiary quality. The affidavit fails to note how this fact was "indicated" to Plaintiff's attorney and provides no information regarding Attorney Schmidt's basis of knowing Lanoie's motivation. *See id*. Furthermore, the theory allegedly espoused by Attorney Schmidt makes little sense, when one considers that there

5

were two other named defendants in the action, including York County itself.  Lanoie had no way of knowing that York County would only be served after his default had entered.  Consequently, a willful failure to notify his employer of the Complaint is unlikely to have been a calculated, retributive act.

There is, moreover, information in the record that tends to substantiate Defendant Lanoie's account.  The pre-filing negotiations that took part between Mr. Ulmer and Plaintiff's attorney are consistent with Captain Angis' alleged statement that "the Jail was aware of the suit."  *See* Affidavit of Roger Lanoie ¶ 5.  Furthermore, the series of events described by Defendant Lanoie is consistent with that of another named defendant, Officer Daniel Dubois, who submitted an affidavit alleging that he too had informed Captain Angis of service of the Complaint, and Dubois had received a similar response.  *See* Affidavit of Daniel Dubois ¶ 5, attached to Defendant Lanoie's Motion to Set Aside Default ("Captain Angis stated that the Jail was aware of the suit and that I would be contacted by County attorneys if they needed anything further from me.").  Although the Court would have found it helpful if Defendant had provided additional information explaining why these reports were not ultimately relayed to York County's risk pool, the Court concludes that there is sufficient information in the record to find Defendant Lanoie's account credible.  Based upon this record, the Court is satisfied that Defendant Lanoie's default was not willful.

Similarly, Plaintiff challenges Defendant Lanoie's explanation for the default, arguing that his account is a fabrication, and that, even if it were true, his explanation fails to provide an adequate justification.  While the Court is satisfied with the veracity of Defendant Lanoie's explanation, the same cannot be said of its adequacy.  After speaking

6

with Captain Angis, Defendant Lanoie made no attempts to ensure that the Complaint was being answered on his behalf.  While he may have had reason to believe that it would be handled for him, Defendant Lanoie was not free to rest upon his belief that others would fulfill his legal obligations for him.  A reasonably prudent person would have taken further action to determine if those obligations had been met.

This is not to say, however, that Defendant Lanoie's lack of diligence forecloses a showing of good cause to set aside the default.  Although negligent, his conduct was not egregious.  His response was clearly calculated towards causing someone to timely answer on his behalf.  Thus, although this factor weighs in favor of denying his motion, it does so only slightly, and fails to outweigh those factors which favor setting aside the default.

Considering the final factor, the Court notes that a Plaintiff may exercise bad faith by "appear[ing] unduly anxious to win by default."  10A Wright, Miller & Kane, § 2693, at 106.  Although the Court finds it to be of concern that Plaintiff's counsel did not inform Mr. Ulmer of Defendant Lanoie's impending default, there is insufficient information to impute any bad faith to him in that respect.  Having found that Plaintiff's allegation of intentional neglect are without credible support, and that Defendant Lanoie's actions were calculated towards providing a timely answer, there is nothing in this record to demonstrate bad faith by either party.  Accordingly, the Court concludes that neither party has conducted himself in bad faith, and that this factor weighs neither for nor against setting aside the default.

Having considered all of the relevant factors, the Court concludes that Defendant Lanoie has demonstrated good cause to set aside the default.

**Conclusion**

For the reasons set forth above, the Court **ORDERS** that Defendant Lanoie's Motion to Set Aside Default be, and it is hereby, **GRANTED** and the default is hereby **STRICKEN**. It is **FURTHER ORDERED** that Defendant Lanoie's responsive pleading shall be filed on or before February 16, 2006.

/s/ Gene Carter
**GENE CARTER**
Senior United States District Judge

Dated at Portland, Maine this 6th day of February, 2006.