UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JASON McGAREY,                    )
                                  )
            Plaintiff             )
                                  )
v.                                )          Docket No. 05-134-P-C
                                  )
YORK COUNTY, et al.,              )
                                  )
            Defendants            )


## RECOMMENDED DECISION ON MOTIONS FOR SUMMARY JUDGMENT

The remaining defendants[1] in this action move for summary judgment.  I recommend that both defendant Roger Lanoie's motion and the motion filed by the other remaining defendants be granted.

### I.  Summary Judgment Standard

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.  By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'"  *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

---

[1] Former named defendants Daniel Dubois, Jane or John Does 1 and 2, Allied Resources for Correctional Health and J. E. McAlevey (*continued on next page*)

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it

---

have been dismissed. Docket Nos. 23, 30 (Amended Complaint), 63.

contends are not in dispute, each supported by a specific record citation. *See id.* The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id.*

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id.*; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." (Citations and internal punctuation omitted).

## II.  Factual Background

The parties' statements of material facts include the following undisputed material facts.

On June 23, 2003 the plaintiff was committed to the custody of the York County Jail to serve a sentence for operating under the influence of intoxicants, habitual offender. Defendants York County, Philip Cote, David Lambert, Jeffrey Pepin and Frank Maschoff's Statement of Material Facts ("County SMF") (Docket No. 67) ¶ 1; Opposing Statement of Material Facts to Defendants York County, Phillip [sic] Cote, David Lambert, Jeffrey Pepin and Frank Maschoff ("County Responsive SMF") (Docket

No. 90-1) ¶ 1.  Shortly after arriving at the jail the plaintiff was classified as minimum security and placed in L block.  *Id*. ¶ 2.  L block contained 15 cells and housed 30 inmates.  Plaintiff's Statement of Additional Material Facts ("Plaintiff's SMF") (Docket No. 90-7)[2] ¶ 4; Defendant[] Roger Lanoie's Response to Plaintiff's Statement of Additional Facts ("Lanoie Reply SMF") (Docket No. 96) ¶ 4; Defendants York County, Philip Cote, David Lambert, Jeffrey Pepin and Frank Maschoff's Reply to Statement of Additional Facts ("County Reply SMF") (Docket No. 99) ¶ 4.[3]  On April 14, 2003 Michael Clark was committed to the custody of the York County Jail.  County SMF ¶ 3; County Responsive SMF ¶ 3.  Clark was classified by defendant Classifications Officer Maschoff as a medium security inmate on that date.  *Id*. ¶ 4. On April 28, 2003 Maschoff conducted a 15-day review and again classified Clark as medium security.  *Id*. ¶ 5.  This classification was based, among other things, on the fact that Clark had multiple prior misdemeanor convictions.  Plaintiff's SMF ¶ 53; County Reply SMF ¶ 53; Lanoie Reply SMF ¶ 53.  When Maschoff completed the classification form on April 14, 2003 he knew that Clark would begin serving a sentence for a Class B felony, aggravated assault, on or before April 22, 2003.  *Id*. ¶ 66.

The York County Jail uses an inmate classification model or system called the Veriscale system.  County SMF ¶ 38; County Responsive SMF ¶ 38.  The Veriscale system uses a point score to classify inmates at or around the time of their arrival at the jail.  *Id*. ¶ 39.  The purpose of the system was to ensure that violent or dangerous offenders were separated from non-violent inmates. Plaintiff's

---

[2] The plaintiff filed two identical statements of additional facts, one apparently directed at defendant Lanoie and the other apparently directed at the remaining defendants.  Docket Nos. 90-7 & 91.  For ease of reference, I will cite only to Docket No. 90-7 while citing the responses both of Lanoie and of the other defendants.

[3] Lanoie objects to paragraph 4 of the plaintiff's statement of additional facts on the grounds that "it contains multiple sentences and multiple facts and each sentence and assertion of fact is not followed by a citation to the specific page or paragraph of identified record material supporting the assertion.  Therefore, the paragraph does not constitute a 'short and concise' statement of facts in compliance with Local Rules 56(c) and 56(f)."  Lanoie Responsive SMF ¶ 4.  The county defendants adopt this response by reference.  County Responsive SMF ¶ 4.  The paragraph contains only two sentences, each of which provides a separate citation to record material.  The objection is overruled.  The defendants admit the paragraph in the alternative.  Lanoie Responsive SMF ¶ 4; County Responsive SMF ¶ 4.

SMF ¶ 40; Lanoie Reply SMF ¶ 40; County Reply SMF ¶ 40.[4]  After the initial classification is performed, a follow-up classification is done fifteen days later which takes into account how the inmate is acting in the facility since his arrival.  County SMF ¶ 40; County Responsive SMF ¶ 40.  York County's Policy and Procedures Manual in effect at the relevant time defined minimum security as "a classification assignment of an inmate who does not pose a risk to the security of the jail or the safety of the community, staff or other inmates."  Plaintiff's SMF ¶¶ 41-42; County Reply SMF ¶¶ 41-41; Lanoie Reply SMF ¶¶ 41-42.  The Manual provides that minimum-security inmates will be housed with other minimum-security inmates.  *Id*. ¶ 43.

The Manual describes medium security as "the classification assignment of an inmate[] which indicates that he/she is a possible risk to jail security, staff, or other inmates.  Inmates classified as Medium Security require moderate staff supervision and secure housing assignment." *Id*. ¶ 44.  The Manual provides that medium-security inmates will be housed with other medium-security inmates. *Id*. ¶ 46.  It describes maximum security as "a classification assignment of an inmate who poses a high risk to the security of the jail or the safety of the staff, visitors or other inmates.  Those inmates classified as Maximum security require close and frequent supervision by corrections staff and high security housing assignments."  *Id*. ¶ 47.  It provides that maximum-security inmates will be housed only with other maximum-security inmates.  *Id*. ¶ 49.

The York County Jail housed medium and minimum security inmates in the same cell block in 2003.  County SMF ¶ 41; County Responsive SMF ¶ 41.

---

[4] The county defendants object to this paragraph of the plaintiff's statement of material facts and Lanoie adopts the county defendants' response.  County Reply SMF ¶ 40; Lanoie Reply SMF ¶ 40.  The objection is that paragraph 40 "is not a concise statement of fact as required by Fed. R. Civ. P. 56(c)."  Federal Rule 56 contains no reference to statements of fact.  Assuming that the county defendants meant to refer to this court's Local Rule 56, the paragraph at issue consists of two sentences.   Only the first sentence, which the defendants admit in the alternative, is quoted here.  The objection is overruled.

Prior to July 21, 2003 both the plaintiff and Clark were assigned to the same cell block in the York County Jail. *Id*. ¶ 7. The plaintiff did not know Clark before their respective incarcerations at the York County Jail. *Id*. ¶ 8. Prior to July 21, 2003 the plaintiff had no problems or incidents involving Clark. *Id*. ¶ 9. On July 21, 2003 at approximately 6:00 or 7:00 p.m. the plaintiff and Clark had a verbal confrontation regarding the telephone in L block. *Id*. ¶ 12. The plaintiff was using the telephone and Clark indicated that he wanted to use it. *Id*. 13. When the plaintiff informed Clark that it was not Clark's turn to use the telephone, Clark asked the plaintiff if he wanted a black eye. *Id*. ¶ 14. The plaintiff responded, "Whatever," and proceeded to make his call. *Id*. ¶ 15. His call did not go through. *Id*. ¶ 16. He hung up the telephone and Clark grabbed it. *Id*. ¶ 17.

Defendant Lanoie was the duty officer in L block on the evening of July 21, 2003. *Id*. ¶ 20. The plaintiff believes that Lanoie was at the officers' station when he and Clark had the discussion about the telephone. *Id*. ¶ 21. Lanoie was sitting at a desk within 10 feet of the plaintiff. Plaintiff's SMF ¶ 8; Lanoie Reply SMF ¶ 8; County Reply SMF ¶ 8. After the discussion, the plaintiff did not talk to Lanoie. County SMF ¶ 22; County Responsive SMF ¶ 22.

After making a call from another telephone in the cell block, the plaintiff went to the bathroom. *Id*. ¶¶ 18-19. Lanoie saw a gathering around the bathroom and while walking to the bathroom to see what was going on uncapped his OC spray. *Id*. ¶ 26. Attempting to clear out the bathroom, Lanoie told inmates who stated that they were waiting to use the facilities to wait at their chairs and when someone came out they could go in. *Id*. ¶ 27. While in the bathroom Lanoie asked if everyone in the stalls was fine and when everyone said that they were he went back to his station. *Id*. ¶ 28. The plaintiff was one of the inmates in the bathroom when Lanoie arrived. *Id*. ¶ 29. He did not tell Lanoie that Clark was threatening him or that he was having a problem with Clark. *Id*. ¶ 32. Lanoie was in the bathroom for about 15 seconds. Statement of Material Facts in Support of Defendant[] Roger Lanoie's

Motion for Summary Judgment ("Lanoie SMF") (Docket No. 75) ¶ 24; Opposing Statement of Material

Facts in Response to Defendant Lanoie ("Lanoie Responsive SMF") (Docket No. 91) ¶ 24.

Sometime after Lanoie had dispersed the inmates from the bathroom, the plaintiff came to the

officers' station and stated that he needed to see the nurse because his jaw was broken.  County SMF ¶

34; County Responsive SMF ¶ 34.  Lanoie called for assistance.  Lanoie SMF ¶ 36; Lanoie

Responsive SMF ¶ 36.  The duty shift supervisor asked the plaintiff who had hit him and the plaintiff

initially refused to disclose the identity of his assailant.  County SMF ¶ 35; County Responsive SMF ¶

35.  The plaintiff eventually identified Clark as his assailant.  *Id*. ¶ 36.

### III.  Discussion

The plaintiff's second amended complaint asserts a claim under 42 U.S.C. § 1983 and a claim

of negligence against defendant Lanoie (Counts I and II), a claim under 42 U.S.C. § 1983 against the

county and defendant Cote (Count III), a claim under 42 U.S.C. § 1983 against the county, Cote,

Lambert, Pepin and Maschoff (Count IV), another claim under 42 U.S.C. § 1983 against the county and

Cote (Count V), and a claim under 42 U.S.C. § 1983 for failure to provide adequate medical care

against the county and Cote (Count VI).  The parties have stipulated to the dismissal of the plaintiff's

"claims against York County and/or any of its employees for a denial of adequate medical care."

Stipulation of Dismissal as to Plaintiff's Denial of Adequate Medical Care Claim Only (Docket No.

64).  This stipulation appears to address only Count VI.  Second Amended Complaint (Docket No. 41)

¶¶ 67-72.

### A.  Counts I and II

Defendant Lanoie seeks summary judgment on the two counts asserted against him.

Defendant[] Roger Lanoie's Motion for Summary Judgment, etc. ("Lanoie Motion") (Docket No. 74)

at 1.  Count I alleges that Lanoie was deliberately indifferent to the substantial risk of harm to the

7

plaintiff posed by Clark and failed to protect the plaintiff from Clark's assault. Second Amended Complaint ¶ 45. The second amended complaint does not specify the constitutional or statutory right that Lanoie allegedly violated. Lanoie contends that there is no evidence that he was subjectively aware of a substantial risk of harm and that the evidence of any indifference on his part does not rise to the "negligence plus" level required under First Circuit case law. Lanoie Motion at 6-9. In the alternative, he asserts that he is protected under the doctrine of qualified immunity from the claims made in Count I. *Id*. at 9-11. Finally, he argues that the negligence claim asserted in Count II is barred by the discretionary function immunity established by the Maine Tort Claims Act. *Id*. at 11-14.

Count I invokes 42 U.S.C. § 1983, which is a vehicle for bringing a claim of violation of a constitutional or statutory right by an individual acting under color of state law. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Although the complaint does not identify the right at issue, the parties agree that the plaintiff alleges violation of a right conferred by the Eighth Amendment to the United States Constitution. Lanoie Motion at 6; Memorandum in Opposition to Defendants' Motions for Summary Judgment ("Opposition") (Docket No. 89) at 10.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "An inmate may sue a correctional facility under the Eighth Amendment for failure to afford adequate protection to inmates from attack by other inmates." *Calderón-Ortiz v. Laboy-Alvarado*, 300 F.3d 60, 63-64 (1st Cir. 2002). "Prison officials must take reasonable measures to guarantee inmates' safety from attacks by other inmates." *Id*. at 64.

> Nevertheless, not every injury a prisoner suffers at the hands of another prisoner is actionable. Prison officials violate the constitutional conditions of confinement only where two requirements are met. The plaintiff must first show that the deprivation alleged is objectively, sufficiently serious. In a failure to protect case, the plaintiff must show that the conditions of incarceration pose a substantial risk of serious harm. . . . [T]he second prong

8

> of the test [is] that the defendant have a sufficiently culpable state of mind.
> The culpable state of mind required is that of deliberate indifference to an
> inmate's health or safety.

*Id*. (citations and internal quotation marks omitted). "[D]eliberate indifference entails something more

than mere negligence." *Id*.

> A prison official may be liable under the Eighth Amendment for acting with
> deliberate indifference to inmate health or safety only if the official knows of
> and disregards an excessive risk to inmate health or safety; the official must
> both be aware of facts from which the inference could be drawn that a
> substantial risk of serious harm exists, and he must also draw the inference.

*Id*. (citation and internal quotation marks omitted). "The risk of inmate-upon-inmate violence has been

held a sufficiently serious harm to implicate inmates' constitutional rights." *Id*. at 66.

Lanoie does not address the first *Calderón* requirement. Lanoie Motion at 6-9. I will

accordingly assume *arguendo* that the first requirement has been satisfied.

Lanoie asserts that the plaintiff "can point to no evidence to establish that Officer Lanoie was

subjectively aware of a substantial risk of harm," Lanoie Motion at 7, but the plaintiff contends that a

reasonable jury could infer that Lanoie overheard Clark's threat at the telephone due to its proximity to

Lanoie's duty station and that Lanoie overheard Clark's verbal threats to the plaintiff in the bathroom

because Lanoie was standing "just behind Clark and within four to five feet of where McGarey was

standing" while this threatening was taking place. Opposition at 11-12; Plaintiff's SMF ¶¶ 7-10, 22-

24. This is sufficient factual information to allow the jury to determine whether Lanoie actually

overheard any threats by Clark against the plaintiff. A closer question is presented by Lanoie's

contention that the plaintiff cannot establish that, even if he heard the alleged threats, Lanoie should

have drawn the inference that a substantial risk of serious harm to the plaintiff existed. In the absence

of any evidence concerning the actual words used by Clark in the bathroom, the plaintiff's conclusory

assertion that Clark verbally threatened him at that time is insufficient to provide a possible basis for a

finding that Lanoie could infer that a substantial risk of serious harm to the plaintiff existed as a result of the alleged threat. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995) (court reviewing motion for summary judgment should pay no heed to conclusory allegations or unsupported speculation).

With respect to Clark's question to the plaintiff at the telephone — asking the plaintiff whether he wanted a black eye — Lanoie contends that such a threat could not give rise to an inference of a substantial risk of serious harm as a matter of law. Lanoie Motion at 7. The only authority cited by Lanoie on this point, *Carter v. Galloway*, 352 F.3d 1346, 1349-50 (11th Cir. 2003), is distinguishable. Given the indulgent standard applicable to interpretation of factual allegations in connection with summary judgment, I conclude that a reasonable jury could find that this prong of the *Calderón* standard has been met. Lanoie goes on to argue that there is insufficient evidence to generate a jury question as to the "indifference" prong of that standard. Lanoie Motion at 7-9.

Lanoie relies on *Burrell v. Hampshire County*, 307 F.3d 1 (1st Cir. 2002), to support his argument on this point. Lanoie Motion at 7. In that case, the plaintiff reported to jail officials either that another inmate named Allen said to the plaintiff "Dis me again like that, and I'll hurt you" or that Allen pushed the plaintiff, but not hard enough to make him fall. 307 F.3d at 5. Allen had previously been disciplined by jail officials for violent altercations with other inmates. *Id*. at 4. The plaintiff told jail officials that "he was afraid that there was going to be a fight between Allen and him." *Id*. at 5. The plaintiff asked that Allen be moved from his cell near the plaintiff. *Id*. He also told a jail official with respect to Allen that "there [is] going to be blood. Somebody's going to get hurt." *Id*. Allen subsequently beat the plaintiff. *Id*. at 6. The First Circuit held that "even if [prison officials] are aware [of a substantial risk of serious harm], they cannot be deliberately indifferent if they responded reasonably to the risk, even if the harm ultimately was not avoided." *Id*. at 8. It concluded

10

that the prison officials "did not fail to take reasonable measures to avert potential harm" and that their behavior "was not unreasonable when considered within the context of what they knew." *Id.* Included in what they knew was the plaintiff's assertion that he was proficient in the martial arts and a decorated war hero and that he never requested protective custody. *Id.* at 9. To their knowledge, Allen had no motive to attack the plaintiff and there was no history of significant altercations between the two over a four-month period. *Id.* While there is no evidence before the court in this case that the plaintiff ever told jail officials anything that would lead them to believe that he was able to defend himself physically, the remaining evidence is sufficiently similar to the facts in *Burrell* to cause me to conclude that the plaintiff could not carry his evidentiary burden on the indifference prong of the *Calderón* standard under applicable First Circuit precedent.

Specifically, when Lanoie noticed a crowd of inmates gathered at the door of the bathroom, he went to the bathroom, dispersed the inmates, asked the remaining people in the bathroom if they were all right and waited until everyone responded that they were. Lanoie SMF ¶¶ 20-23; Lanoie Responsive SMF ¶¶ 20-23. The plaintiff did not tell Lanoie that Clark had threatened him. *Id.* ¶¶ 16, 29, 33. Before July 21, 2003 the plaintiff had no problems and was not involved in any incidents with Clark. *Id.* ¶ 5. There is no evidence in the summary judgment record of violence by Clark against any other inmate. On the showing made, Lanoie is entitled to summary judgment.

This conclusion makes it unnecessary to consider Lanoie's alternate contention that he is protected from liability on the claim in Count I by the doctrine of qualified immunity. Lanoie Motion at 8-11.

Count II is subject to the Maine Tort Claims Act, because it alleges that Lanoie "negligently failed to protect Jason McGarey from the assault by Michael Clark." Second Amended Complaint ¶ 49. The second amended complaint also alleges that at all relevant times Lanoie was a corrections

officer employed by York County. *Id*. ¶ 4. The applicable section of the Maine Tort Claims Act provides that "employees of governmental entities shall be absolutely immune from personal civil liability for . . . [p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused . . . ." 14 M.R.S.A. § 8111(1)(C). The statute also provides that "[t]he absolute immunity provided by paragraph C shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question . . . ." 14 M.R.S.A. § 8111(1). The Maine Law Court has held that "the management and care of prisoners is a discretionary function" under the Maine Tort Claims Act. *Erskine v. Commissioner of Corrections*, 682 A.2d 681, 686 (Me. 1996). The Law Court held in that case that the defendants, including "various prison officials and guards," were entitled to absolute immunity under section 8111(1) from a claim, *inter alia*, that they failed to protect one inmate from another. *Id*. at 683 n.1, 686.

The plaintiff contends that Lanoie is not entitled to section 8111(1) immunity in this case because "it is well-established that discretionary immunity does not apply to the acts of officials that are 'so egregious as to clearly exceed, as a matter of law, the scope of any discretion [they] could have possessed in [their] official capacity,'" citing *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1236-37 (D.Me. 1996). Opposition at 18. That statement of Maine law is correct, as far as it goes. It does nothing, however, to distinguish *Erskine* from the facts of this case. The relevant facts in *Erskine* are as follows:

> Th[e] action ar[ose] from an incident in October 1989 at the Maine State Prison in Thomaston during which Michael J. Orsini was beaten by a fellow inmate and suffered physical injuries. While Orsini was in the prison cafeteria, Arnold Robinson, unexpectedly and without provocation, hit him with a metal tray. Orsini suffered injuries to his face and eye. Immediately following the incident, Robinson was removed from the cafeteria and placed in segregation. Erskine does not suggest that prison officials had any specific reason to expect the attack on Orsini that day. Erskine does contend, however, that Robinson's past history had alerted prison officials to the danger of such conduct.

12

*Erskine*, 682 A.2d at 683.  Here, the plaintiff does contend that Lanoie overhead Clark's threat to give the plaintiff a black eye, Plaintiff's SMF ¶ 11, a factual assertion denied by Lanoie, Lanoie Reply SMF ¶ 11.  That disputed fact, however, is simply not enough to compel an outcome different from that in *Erskine*.  The statute provides immunity even when a governmental employee abuses his or her discretion.  Failure to intervene to somehow prevent injury after hearing one inmate ask another if he wanted a black eye is at most an abuse of discretion.  It cannot reasonably be characterized as so egregious as to exceed the scope of Lanoie's discretion as a matter of law.

Lanoie is entitled to summary judgment on Count II.

## B.  Counts III-V

The remaining counts of the Second Amended Complaint still at issue are Counts III through V.  All three counts are asserted against York County and Philip Cote.  Second Amended Complaint ¶¶ 51-66.  Count IV is also asserted against defendants David Lambert, Jeffrey Pepin and Frank Maschoff.  *Id*. ¶¶ 56-60.

*1.  Lambert, Pepin and Maschoff.*   Count IV alleges that all of the remaining defendants were responsible for the inmate classifications that led to Clark being incarcerated with the plaintiff without adequate supervision, knowing that this posed a substantial risk of harm to "non-violent inmates such as" the plaintiff and resulting in the plaintiff's injuries.  *Id*. ¶¶ 57, 60.  Lambert, Pepin and Maschoff contend that the plaintiff cannot produce sufficient evidence to demonstrate that they acted with deliberate indifference with respect to the classification of the plaintiff.  Defendants York County, Philip Cote, David Lambert, Jeffrey Pepin and Frank Maschoff's Motion for Summary Judgment, etc.

("County Motion") (Docket No. 73) at 5-7.  In response, the plaintiff discusses only the liability of Maschoff.  Opposition at 18-20.[5]

This court may not grant summary judgment to Lambert and Pepin merely because the plaintiff has not responded to their motion.  *Cordero-Soto v. Island Finance, Inc.*, 418 F.3d 114, 118 (1st Cir. 2005).  Under these circumstances, a trial court must still "inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law."  *Id*.  Here, Lambert and Pepin assert that they were not involved in the pre-assault classification of Clark.  County Motion at 6.  It would be difficult, if not impossible, for them to assert facts to prove this negative.  It remains the plaintiff's burden to demonstrate that they had some involvement in the classification process that lies at the heart of this claim.  The plaintiff's statement of material facts includes many statements about Maschoff, Plaintiff's SMF ¶¶ 55-67, but none mentioning Lambert or Pepin.  On the showing made, Lambert and Pepin are entitled to summary judgment.

With respect to Maschoff, the plaintiff contends that he demonstrated the necessary deliberate indifference to a serious risk of harm "to inmates who would be housed with Clark, including" the plaintiff "by classifying Clark as if he were serving a sentence for a misdemeanor[] when, in fact, Maschoff was aware (long before the assault upon McGarey) that Clark was serving a sentence for a violent felony."  Opposition at 18.  He asserts that, had that information been taken into account, Clark would have been classified as a maximum-security inmate and not housed with the plaintiff.  *Id*. at 18-19.  He states that Maschoff knew when he classified Clark on April 14, 2003 that he would begin serving a sentence for the Class B felony of aggravated assault on or before April 22, 2003 and, had he checked, would have learned that Clark actually began serving this sentence on April 14, 2003.  *Id.*

---

[5] The parties agree that the deliberate indifference standard applies to this claim as well.  County Motion at 5-6; Opposition at 18-19.

at 19.  He goes on to contend that Maschoff should have revised Clark's classification score on April 22 or during the routine 15-day classification review.  *Id*.

The county defendants respond, Defendants York County, Philip Cote, David Lambert, Jeffrey Pepin and Frank Maschoff's Reply Memorandum of Law, etc. ("County Reply") (Docket No. 98), at 2, that the alleged acts or omissions do not rise to a level above negligence, which is insufficient as a matter of law to establish deliberate indifference, citing and quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference describes a state of mind more blameworthy than negligence.").  Neither side cites any other case authority on this issue.

The plaintiff's argument necessarily assumes that the fact that Clark began serving a sentence for aggravated assault meant that there was a substantial risk that he would cause serious harm to another inmate or that an inmate classified at the maximum-security level necessarily poses a substantial risk of serious harm to inmates classified at the minimum-security level.  Significantly, the definition of maximum security in the written classification policy at issue describes "an inmate who poses a high risk to the security of the jail or the safety of the staff, visitors *or* other inmates." Plaintiff's SMF ¶ 47 (emphasis added); County Reply SMF ¶ 47.  Neither of the plaintiff's necessarily implied premises has been established by the summary judgment record.  I agree with the defendants that the evidence before the court cannot reasonably be construed to allow a jury to conclude that Maschoff's alleged actions or inactions created a substantial risk that Clark would cause serious harm to the plaintiff or another inmate.  Accordingly, the plaintiff cannot demonstrate deliberate indifference and Maschoff is entitled to summary judgment.

*2. Defendants York County and Philip Cote*.  Count III alleges that defendant Cote, who was the York County Sheriff, and the county "were responsible for the policies, practices and procedures which led to" the assignment of Clark and the plaintiff to the same cell block, resulting in Clark's assault on the

plaintiff.  Second Amended Complaint ¶¶ 52, 55.  Noting that liability under 42 U.S.C. § 1983 may be premised on an officially promulgated policy, custom or practice of a governmental unit, *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989), these defendants contend that the plaintiff cannot demonstrate the necessary causal connection between the alleged policy or practice and his injuries, County Motion at 7-8.  The plaintiff responds that he "had a constitutional right to serve his sentence without a substantial risk of assault by [] another inmate" and that the county is liable on this claim because it had a custom of disregarding its own classification system, "thereby placing non-violent inmates . . . at unnecessary risk of assault by violent inmates like Clark."  Opposition at 20.  He concedes that the county's classification policy was "facially valid," but argues that its custom of disregarding the policy "led directly to the violation of [his] Eighth Amendment rights."  *Id*. at 20-21.

The plaintiff's argument appears to assume that the county had a custom of disregarding the classification policy.  The plaintiff has the burden of providing evidence of such a custom.  Under most circumstances a single constitutional violation by an official who does not make policy is insufficient to establish a custom, policy or practice for the purposes of a section 1983 claim. *Bordanaro*, 871 F.2d at 1156-57.  The only factual allegation cited in the plaintiff's memorandum of law that might possibly support the assertion that the county had such a policy is the following: "Notwithstanding the classification distinctions described above, at the time of the assault, cell blocks L, D and F at the York County Jail each housed minimum-security inmates together with medium-security inmates.  K block housed only minimum-security inmates."  Opposition at 7; Plaintiff's SMF ¶ 51; County Responsive SMF ¶ 51.  The "classification distinctions described above" include provisions in the written classification policy to the effect that "minimum-security inmates will be housed . . . with other Minimum Security inmates" and "[m]edium security inmates will be housed . . .

with other Medium Security inmates." *Id*. at 6.  Thus, for purposes of the claim in Count III, it is only the housing of medium-security inmates with minimum-security inmates, not the classification of Clark as medium-security, that is at issue.  With this understanding, it appears that the plaintiff has provided sufficient evidence to survive the motion for summary judgment on the question of the existence of a custom or policy.

The question of causation is another matter, however.  The custom "must have been the cause of and the moving force behind the deprivation of constitutional rights." *Bordanaro*, 871 F.2d at 1156.  On this point, the defendants contend that the plaintiff must present evidence that the housing of minimum- and medium-security inmates together created an increased risk of violence among inmates, and that he has failed to do so.  County Motion at 9.  In response, the plaintiff asserts, without citation to the summary judgment record or case authority, that Clark was "known to pose a possible risk to other inmates."  Opposition at 21.  Even if this factual assertion had been properly supported by a citation to the summary judgment record, presumably paragraphs 11 and 24 of the plaintiff's statement of material facts, the issue is not Clark's propensity for violence against other inmates.  When it is a custom or practice that is at issue, the necessary causal connection is provided by evidence that such a custom or policy has led or will lead to violence against other inmates.  *See K.F.P. v. Dane County*, 110 F.3d 516, 519 (7th Cir. 1997).   Again, it is also relevant that  the written policy itself only provides that medium-security inmates are "a possible risk to jail security or the safety of community, staff, or other inmates."  Plaintiff's SMF ¶ 44; County Reply SMF ¶ 44.  Something more is required to allow a reasonable jury to conclude that the custom of housing medium-security inmates with minimum-security inmates was the cause of and the moving force behind the plaintiff's injuries.

Thus, in *Carmichael v. Richards*, 307 F.Supp.2d 1014 (S.D. Ind. 2004), where the plaintiff offered expert testimony to the effect that the inmate-on-inmate attack in that case was foreseeable, the

court held that such testimony was not evidence of a causal link between a policy of mixing maximum and medium security inmates and increased inmate violence, *id*. at 1023. Similarly, in *James v. Milwaukee County*, 956 F.2d 696 (7th Cir. 1992), the plaintiff claimed that the defendant's "prisoner classification system created a pervasive risk of violence" and that the defendants ignored that risk and offered expert testimony that the prison housing policy "was apt to cause increased inmate violence," *id*. at 700-01. Noting that the plaintiff offered "no concrete proof, such as statistical or comparative evidence, to show this policy resulted in increased inmate violence" or any evidence of an instance in which an inmate attack in any prison was attributable to a policy of housing parole violators with probation violators, the court held that the policy did not create such a pervasive risk of harm that the defendants' knowledge of the risk could be inferred. *Id*. at 701. *See also* cases cited at *id*., 701-02.

The plaintiff here offers even less evidence on this point than was provided in *Carmichael* and *James*. He has not provided sufficient evidence of causation to allow the claim asserted in Count III to proceed. Defendants Cote and York County are entitled to summary judgment on Count III.[6]

Count IV is also asserted against these two defendants. Second Amended Complaint ¶¶ 56-60. The county defendants contend that Cote and the County are entitled to summary judgment on Count IV because this claim "would be dependent upon the existence of an underlying constitutional violation," and the granting of summary judgment on Count III means that there is no underlying constitutional violation. County Motion at 10. The plaintiff does not respond to this argument. Indeed, it is only the caption of Count IV that mentions these defendants; no allegations are asserted against them in the body

---

[6] The plaintiff contends that defendant Cote is liable on this claim because his involvement in the practice of mixing minimum and medium security inmates in the prison population "may be imputed based upon the widespread and obvious nature of this practice." Opposition at 22. It is not clear from the second amended complaint or from the plaintiff's memorandum of law whether Cote is sued in his personal or official capacity, or both, but in any event the absence of evidence of causation is fatal to the claim against him as well.

of Count IV.  Second Amended Complaint ¶¶ 57-60.  The plaintiff's failure to respond leaves the court without any indication of the nature of the claim asserted against Cote or the County in Count IV. Under these circumstances, it is not the role of the court to attempt to identify all of the possible claims that could be asserted and then to analyze each under the summary judgment standard.  Any claims asserted against Cote or the county in Count IV should be dismissed *sua sponte*, as the second amended complaint fails to state a claim against them in Count IV on which relief may be granted.

Count V asserts a claim against Cote and the county for violation of the Eighth Amendment for failing to provide the plaintiff with a liquid diet "although he could not eat solid food due to the wiring of his jaw."  Second Amended Complaint ¶¶ 62-66.  The county defendants contend that the plaintiff cannot prove that any such failure was the result of a custom, policy or practice and that such proof is required in order for the plaintiff to succeed on this claim.  County Motion at 11-14.  The plaintiff does not respond to any of the county defendants' arguments with respect to Count V.  He offers no facts in his statement of additional facts that could reasonably be construed to support this claim.  An Eighth Amendment claim requires a showing of deliberate indifference.  *Farmer*, 511 U.S. at 837. With respect to this claim, the plaintiff has offered no evidence of deliberate indifference on the part of Cote or for which the county could be held legally responsible.  Cote and the county are entitled to summary judgment on Count V.

## IV. Conclusion

For the foregoing reasons, I recommend that the defendants' motions for summary judgment be **GRANTED**, with the exception of the claims asserted against defendants Cote and York County in Count IV, which I recommend be **DISMISSED** *sua sponte*.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.   A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 26th day of December, 2006.

<u>/s/ David M. Cohen</u>
David M. Cohen
United States Magistrate Judge